**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 19-20822

NATHANAL MICHAEL PACE,

Defendant.
_________________________________/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the court is Defendant Nathanal Michael Pace's motion to suppress evidence and all fruits of the search conducted pursuant to a state search warrant issued for his mother's Detroit home in which he had—and, according to investigators, still—likely resided. (ECF No. 22.) Because there was a nearly three-month gap between an upload of child pornography reported to police by Dropbox, Inc. and the issuance of the search warrant for the residential address, Defendant argues that officers did not do enough to corroborate the idea that Defendant still lived at the home. (*Id.*) Therefore, Defendant contends, at the time the warrant was issued, there was not sufficient particularized probable cause supporting a search of the home for child pornography (Id.) Further, Defendant contends that the affidavit was so lacking that the officers could not have, in good faith, relied on the warrant once it was issued. The motion has been fully briefed, and a hearing was held on December 17, 2020. E.D. Mich. L.R. 7.1(f)(2). The court will deny the motion.

## I. BACKGROUND

Defendant has been charged with the production, 18 U.S.C. 2251(a), distribution, 18 U.S.C. 2252A(a)(2), receipt 18 U.S.C. 2252A(a)(5)(B) and possession of child pornography, 18 U.S.C. 2252A(a)(5)(B). (ECF No. 1.) The investigation was initiated when Dropbox, Inc. tipped off state police that a user named "Nathan Pace" had uploaded 36 videos and images of child sexually abusive material ("CSAM") on September 8, 2019. (ECF No. 22-1. PageID.99.) The account was linked to a specific IP address as well as an email "nathenpace@gmail.com." (*Id.* at 100.) The Gmail account was, in turn, linked to a recovery email address: "pace@detroitdenby.org." (*Id.*)

On November 22, 2019, a "search warrant" was issued to AT&T for the owner of the IP address. (*Id.*) AT&T responded that the address was assigned to an active internet customer, since 2017, at the Bringard Street address in Detroit with "Aisha Pace" listed as the name on the account. (*Id*.) A search of Michigan Secretary of State records by investigating officers showed five people registered at the address, all with the last name "Pace." These included Aisha and Defendant Nathanal. (*Id.*) The affidavit states that "[t]he query show[ed] Nathanal Pace still residing at this residence." (*Id.*) The investigating officer also concluded that Defendant likely produced some of the uploaded CSAM himself because it was readily apparent that a young boy in some of the videos/images was the child of one of Defendant's Facebook friends. (*Id.* at 101.) GPS metadata contained in one of the images showed it was created in the area near the child's home. (*Id.*)

The investigating officer compiled this information into a five-page affidavit, and a search warrant was issued on December 4, 2019. (ECF 22-1.) When officers executed

the warrant, Defendant was present at the residence. (ECF No. 24, PageID.111.) During an interview, he admitted to both downloading and producing CSAM. (*Id.*) Defendant further admitted that he had sexually assaulted two minors and made digital recordings of it. (*Id.*) And he admitted to sexually touching a third minor. (*Id.*) During the search, CSAM was found on Defendant's smartphone. (*Id.*) CSAM was also found on two Dropbox accounts controlled by Defendant, obtained pursuant to a separate warrant. (*Id.*)

Defendant now moves to suppress all evidence recovered and other fruits of the home's search. (*See* ECF No. 22.)

## II. STANDARD

The Fourth Amendment prohibits judges from issuing search warrants unless the requesting officer demonstrates probable cause. U.S. Const. amend. IV. "A police officer has probable cause to conduct a search when the facts available to [the officer] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (alterations and internal quotation marks omitted). "Probable cause deals with probabilities and depends on the totality of the circumstances." *D.C. v. Wesby,* 138 S. Ct. 577, 586 (2018) (internal quotation marks omitted). Therefore, "[p]robable cause is not a high bar" and "is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (internal quotation marks omitted).

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (citation omitted). In determining probability, officers and magistrates may rely on "common-sense conclusions about

human behavior." *Id.* at 587 (citation omitted); *see also United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc) ("Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out . . . ."). Moreover, judges are not permitted to engage in "an excessively technical dissection" of the record when determining probable cause. *Wesby,* 138 S.Ct. at 588 (internal quotation marks omitted) (reversing the Court of Appeals for examining a case this way). Facts must be considered together, not apart, since "the whole is often greater than the sum of its parts." *Id.* Finally, probable cause "does not require officers to rule out a suspect's innocent explanation for suspicious facts." *Id.* Instead, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)).

The court reviewing a warrant does not write on a blank slate. A judicial officer who issues a warrant "should be paid great deference." *Gates*, 462 U.S. at 236 (internal quotation marks omitted). The reviewing court is not permitted to attempt a *de novo* review of probable cause; the issuing judge's decision should be left undisturbed if there was a "substantial basis" for the probable-cause finding. *Id.* at 238–39; *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000). In service of this standard, an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975.

"The unique challenges of child-pornography crimes demand a practical approach to the probable-cause question." *United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018). While generally the Fourth Amendment's nexus requirement is not

satisfied by "[p]robable cause to believe a person committed a crime" without "some independent evidence linking the residence to the crime," the Sixth Circuit has held that "a nexus exists when law enforcement connects the IP address used to access a website to the physical location identified by the warrant." *Id.* (citations omitted).

**III. DISCUSSION**

Defendant argues that probable cause for the issuance of the warrant did not exist because an insufficient nexus linked the Bringard Street home to Defendant. He argues that the affidavit did not demonstrate a sufficient link because the passage of time—nearly three months—meant the information associating him with the address had become stale by the time the warrant was issued (ECF No. 22, PageID.93-94). Defendant argues that because he was only 24 years old, it should have been assumed that he was more transient than someone who was older and more established. (ECF No. 25, PageID.133-34.) Therefore, he argues that Secretary of State driver's license records alone were insufficient to corroborate the supposition that Defendant still resided at the Bringard Street residence. (*Id.*) Finally, Defendant argues that the good faith exception should not prevent suppression because "any reasonably well-trained officer . . . would know he . . . should investigate and verify that the suspect currently lives at or at least frequents the target residence." (*Id.* at 136.)

The government responds that the affidavit relied on five pieces of evidence to conclude that Defendant was likely responsible for the upload of child pornography and that he still lived at the home on Bringard Street, presenting probable cause to search the residence:

1) Dropbox, Inc. reported an upload of approximately 36 videos and images of child pornography on September 8, 2019 from nathenpace@gmail.com from an AT&T IP address.
2) The specific IP address that was provided resolved to "Aisha Pace" at the Bringard residence.
3) the Dropbox account that uploaded the contraband also resolved to "nathanial pace."
4) The Secretary of State database indicated that Defendant lived at the Bringard street residence.
5) A careful review of the material showed that Pace likely produced the sexually explicit material with a friend's child. (ECF No. 24, PageID.114.)

Citing the factors laid out in *States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009), the government argues that in the context of child pornography, the delay between the upload of child pornography and the warrant's issuance did not render the facts stale mainly because of the very nature of child pornography. (ECF No. 24, PageID.116-18.) The government notes that traces of child pornography, even if deleted, were likely still to exist on any electronic devices once possessed by the Defendant that were left in the home. (*Id.*) Alternatively, since the executing agents relied on a valid search warrant, the government argues that the good faith exception should apply because any misconduct possibly detected within the facts of this investigation was not "sufficiently deliberate that exclusion can meaningfully deter it." (*Id.* at 121.)

**A. Staleness Factors**

While it is true that "stale information cannot be used in a probable cause determination," the Sixth Circuit has held that the same time limitations that apply to more fleeting crimes do not control in cases of child pornography and it has laid out four factors to be considered when determining staleness:

> (1) **the character of the crime** (chance encounter in the night or regenerating conspiracy?),
> (2) **the criminal** (nomadic or entrenched?),

> (3) **the thing to be seized** (perishable and easily transferrable or of enduring utility to its holder?), and
> (4) **the place to be searched** (mere criminal forum of convenience or secure operational base?).

*United States v. Frechette*, 583 F.3d 374, 377–78 (6th Cir. 2009) (holding that a warrant, based on a child pornography website subscription purchased sixteen months earlier, was not stale because evidence of the contraband was still likely to exist on his electronics) (emphasis added). Applying the *Frechette* factors to the present case, it becomes apparent that the information in the probable cause affidavit was not stale.

In *Frechette*, the Sixth Circuit made clear that "child pornography is not a fleeting crime" and "evidence of child pornography downloading often remains on a computer for lengthy periods of time." *Id.* While it is true, as Defendant contends, that all the CSAM was uploaded to Dropbox in one day, the files described in the affidavit also showed that Defendant was most likely personally involved in the creation of at least some of the material. (*See* ECF No. 22-1, PageID.100-01.) And the investigating officer was able to corroborate the identity of the one young male in many of the videos and images as the child of Defendant's Facebook friend. (*Id.*) He was even able to almost pinpoint the location of the images—an area very near the child's home—using GPS metadata embedded in the image. (*Id.*) The number of videos/images and the fact that two different young boys were separately depicted made it extremely likely that Defendant had engaged in the production of CSAM on multiple occasions, rendering less singular the seemingly isolated single day of the Dropbox upload.

Defendant argues, relying only on his counsel's personal observations and without citation to authority, that the "nature of the criminal" here, a 24-year-old young man ostensibly residing at his mother's house, was more likely, in fact, to have been

more “nomadic” than criminals in other child pornography cases, and therefore less likely to currently reside at the address in question.[1] (*See* ECF No. 22, PageID.92.) Defendant argues that a one-time upload of CSAM from his mother’s house, corroborated by current state driver’s license records indicating he “still” lived there (as the affidavit recited) is insufficient to show he likely resided at that location three months later. (*See* ECF No. 25, PageID.133 (suggesting that investigators should have surveilled the house or relied on additional databases to corroborate his location).) But Defendant cites no case law indicating that current Secretary of State records are insufficient to corroborate a defendant’s location that was also established by IP address, a Dropbox Account in Defendant’s real name, and a personal email account.

Furthermore, even if Defendant was somewhat “nomadic” and spent time at other residences, there was nonetheless a probability that electronic devices he used at his mother’s house might still contain traces of the CSAM. After all, the records provided by AT&T and included in the affidavit show that the same internet subscription that was active at the time of the Dropbox upload was still active at the home at the time the warrant was issued, indicating that at least some of the same electronic internet connected devices were still present in the home.

---

[1] The court is actually quite skeptical of Defendant’s contention that the Defendant’s age makes him more likely nomadic. In fact, it appears that millennials in the U.S. are *more* likely to live at home with their parents than any recent generation and living at home is now the most common living arrangement for males in Defendant’s age group. *See* Richard Fray, For First Time in Modern Era, *Living With Parents Edges Out Other Living Arrangements for 18- to 34-Year-Olds*, Pew Research Center, (May 24, 2016), https://www.pewsocialtrends.org/2016/05/24/for-first-time-in-modern-era-living-with-parents-edges-out-other-living-arrangements-for-18-to-34-year-olds/ (“For men ages 18 to 34, living at home with mom and/or dad has been the dominant living arrangement since 2009”) (last visited 12/28/2020).

In *Frechette*, the Sixth Circuit notes that "images of child pornography can have an infinite life span." *Id.* at 379. So, "[u]like cases involving narcotics that are bought, sold, or used, digital images of child pornography can be easily duplicated and kept indefinitely even if they are sold or traded." *Id.* So in the present case, this factor clearly weighs against staleness, especially considering that the evidence suggested that Defendant was actively involved in the production of CSAM himself.

Finally, the place to be searched also suggests the information in the affidavit was not stale at the time of the warrant's issuance. If nothing else, the driver's license residency records and IP location suggests that Defendant had at one time recently resided at the Bringard Street residence. Because "'child pornography is generally carried out in the secrecy of the home and over a long period," a residence is usually a child pornographer's "secure operational base." *Id* (quotations omitted).

Weighing all these factors together, the court concludes that the evidence in the affidavit was not stale at the time of the warrant's issuance. *See Wesby*, 138 S.Ct. at 588. Moreover, even if it were true that the officers could have done more to further corroborate the contents of the affidavit, it is not the role of this court to "say [what] should [or could] have been added." *See Allen*, 211 F.3d at 975. Here, the court finds sufficient corroboration, and that the facts supporting the affidavit were not stale.

**B. Good Faith Exception**

The parties also disagree on whether the "good faith" exception would apply to the officer's reliance on the warrant. Evidence seized without probable cause violates the Fourth Amendment and may be suppressed by the reviewing court. "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary

rule usually precludes its use in criminal proceeding against the victim of the illegal search and seizure." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). However, "[t]he fact that a Fourth Amendment violation occurred ... does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 129 S.Ct. 695, 700 (2009). Even if a reviewing court concludes that a warrant lacked probable cause, courts should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Carpenter*, 360 F.3d at 595 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Higgins*, 557 F.3d 381, 391 (6th Cir.2009) (quoting *Leon*, 468 U.S. at 922–23 n.23). Pursuant to *Leon*, the Sixth Circuit has ruled that the good-faith exception will not apply "where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more than a "bare bones" affidavit." *United States v. Washington,* 380 F.3d 236, 241 (6th Cir. 2004).

As discussed above, the court finds that the relevant search warrant was valid and supported by probable cause. Assuming that the court had found the warrant to be stale, the court would nonetheless deny the motion to suppress under the *Leon* good faith exception. Defendant argues that the good faith exception is inapplicable because indicia of probable cause were so lacking in the present case that the officer's reliance on the warrant was not objectively reasonable. (ECF No. 22, PageID.95.) As the Sixth

Circuit has previously explained, “a bare-bones affidavit is a conclusory affidavit, one that asserts only the affiant's belief that probable cause existed.” *United States v. White,* 874 F.3d 490, 496 (6th Cir. 2017) (citations and quotations omitted). Such a deficient affidavit “provides nothing more than a mere guess that contraband or evidence of a crime would be found, either completely devoid of facts to support the affiant's judgment that probable cause exists, or so vague as to be conclusory or meaningless.” *Id.* (citations and quotations omitted).

An affidavit is not bare bones if “although falling short of the probable-cause standard, it contains ‘a minimally sufficient nexus between the illegal activity and the place to be searched.’” *Id.* at 496-97 (quoting *Carpenter*, 360 F.3d at 596). “If the reviewing court is ‘able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been’—'some modicum of evidence, however slight’—'between the criminal activity at issue and the place to be searched,’ then the affidavit is not bare bones and official reliance on it is reasonable.” *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 749-50 (6th Cir. 2005)). It is only when a law enforcement official operates in “deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights” will the “heavy toll” of suppression “pay its way.” *Davis v. United States*, 564 U.S. 229, 237–38 (2011) (quotations omitted).

Defendant’s briefing provides only a cursory argument for why the good faith exception should not apply to the officer’s reliance on the warrant here. He argues that “any reasonably well trained officer. . . would know he. . . should investigate and verify that the suspect currently lives at or at least frequents the target residence. This is common sense; investigation 101.” (ECF No. 25, PageID.136.) In effect, Defendant

merely restates his argument that the warrant lacked probable cause to be issued, but he fails to directly address how the five specific factual bases presented in the affidavit do not, at minimum, represent “some modicum of evidence, however slight” between “the criminal activity at issue and the place to be searched.” *Laughton*, 409 F.3d at 749-50 (6th Cir. 2005).

The affidavit, as issued, properly linked the IP address assigned to the residence to Defendant because the Dropbox account containing the CSAM and associated email address were both in Defendant’s name. (ECF No. 22-2, PageID.99-100.) The officers’ attempt to corroborate this information by checking current Michigan Secretary of State driver’s license records showing that Defendant “still” lived at the address, (*Id.*), was sufficient to show the officers acted in good faith. The affidavit is indicative of a rational and thorough investigation, and goes far beyond establishing a “minimally sufficient nexus between the illegal activity and the place to be searched.” It is therefore is not “bare bones.” *See Carpenter*, 360 F.3d at 596. So even if the affidavit’s facts were deemed stale, and failed to establish probable cause, the good faith exception applies and the fruits of the search should not be suppressed.

## IV. CONCLUSION

The court finds that the affidavit is sufficient to establish probable cause, and even if it not, the good faith exception applies, given the officer’s reasonable reliance on a search warrant that presented far more than a bare- bones recital. Therefore, evidence recovered as a result of the search cannot be suppressed. For these reasons, and as further stated on the record during the December 17, 2020 hearing,

IT IS ORDERED that Defendant's "Motion to Suppress Evidence of Search Warrant" (ECF No. 22) is DENIED.

s/Robert H. Cleland /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 29, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 29, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Criminal\19-20822.PACE.Motion.to.supress.AAB.RHC.2.docx